AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>1216 West Jackson Street,<br>Painesville, Ohio 44077 and all items<br>described in Attachment B | )<br>)<br>)<br>)  Case No. 1:16 MJ 9003<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____Ohio_____
*(identify the person or describe the property to be searched and give its location)*:
1216 West Jackson Street, Painesville, Ohio 44077, described further in Attachment A, attached hereto and incorporated herin by reference.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____2-2-16_____
          *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
William H. Baughman, Jr. _____.
          *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
          ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __1.19.16 12:30 p.m.__          __William H Baughman Jr.__
          Judge's signature

City and state:   Cleveland, OH _____          _____William H. Baughman, Jr., US Magistrate Judge_____
          *Printed name and title*

1:16 MJ 9003

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The location known as 1216 West Jackson Street, Painesville, Ohio 44077 is described as a one story, white colored siding, gray colored roof, single family dwelling with a two car detached garage behind the residence.  The numerals "1216" are located on a post near the front door of the residence.  The residence is located on the north side of West Jackson Street, approximately 0.10 miles west of Route 44 and approximately 0.25 miles east of Shamrock Boulevard in the city of Painesville, Ohio.

The premises to be searched includes any appurtenances to the real property that is the SUBJECT PREMISES of 1216 West Jackson Street, Painesville, Ohio 44077 and any storage units and/or outbuildings.

1:16 MJ 9003

## ATTACHMENT B

## INFORMATION TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2252A

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h.  evidence of the times the COMPUTER was used;

    i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.  records of or information about Internet Protocol addresses used by the COMPUTER;

    l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    m.  contextual information necessary to understand the evidence described in this attachment.

    n.  evidence of any accounts with an internet service provider.

    o.  evidence of the use of or accounts with online storage or remote storage providers.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography and child erotica, including, but not limited to the images accessed on "Website A.".

5. Records, information, and items relating to violations of the statutes described above including

    a.  Records, information, and items relating to the occupancy or ownership of 1216 West Jackson Street, Painesville, Ohio 44077 including utility and telephone bills, mail envelopes, or addressed correspondence; Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

    b.  Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

c. Records and information relating to sexual exploitation of children, including correspondence and communications between users of Website A.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

1216 West Jackson Street,
Painesville, Ohio 44077 and all items
described in Attachment B

)
)
)
)
)
)

Case No. 1:16 MJ 9003

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

1216 West Jackson Street, Painesville, Ohio 44077, described further in Attachment A, attached hereto and incorporated herin by reference.

located in the _____ Northern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A(a)(5)(B) | Knowingly possess and access with intent to view child pornography |

The application is based on these facts:

See Affidavit, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Charles Sullivan, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  1-19-16

/s/ WILLIAM H. BAUGHMAN, JR.
*Judge's signature*

City and state: Cleveland, Ohio

William H. Baughman, Jr., U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

## INTRODUCTION

I, Charles Sullivan, having been first duly sworn, do hereby depose and state as follows:

1.      I have been employed as a Special Agent of the Federal Bureau of Investigation (FBI) since February 1998.  While employed by the FBI I have investigated federal criminal violations related to cyber crime, child exploitation, and child pornography.  I have gained experience through training, seminars, classes, and everyday work relating to conducting these types of investigations.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.  Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2252A.

2.       Your Affiant is a Special Agent of the Federal Bureau of Investigation, and as such, is an investigative or law enforcement officer of the United States within the meaning of Rule 4 and Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.  Your Affiant is engaged in the enforcement of criminal laws and is within a category of officers authorized by the Attorney General to request and execute arrest and search warrants pursuant to Title 18, U.S.C., Sections 3052 and 3107; and DOJ regulations set forth at Title 28, C.F.R., Sections 0.85 and 60.2(a).

3.      I have probable cause to believe that contraband, evidence of a crime, fruits of a crime, and instrumentalities of violations of  18 U.S.C. § 2252A(a)(5)(B), which prohibits a person from knowingly possessing or accessing with intent to view any book, magazine, periodical, film, videotape, computer disk or any other material that contains an image of child pornography that has been mailed or shipped or transported using any means or facility of interstate or foreign

commerce or affecting interstate or foreign commerce by any means, including by computer, are

located within 1216 West Jackson Street, Painesville, Ohio 44077 (hereinafter the "SUBJECT

PREMISES").  I submit this application and affidavit in support of a search warrant authorizing a

search of the SUBJECT PREMISES, as further described in Attachments A and B, incorporated

herein by reference, which is located in the Northern District of Ohio.  Located within the

SUBJECT PREMISES to be searched, I seek to seize evidence, fruits, and instrumentalities of

the foregoing criminal violations.  I request authority to search the entire SUBJECT PREMISES,

including the residential dwelling(s), detached garage(s), outbuilding(s), and any computer and

computer media located therein where the items specified in Attachment B may be found and to

seize all items listed in Attachment B as contraband and instrumentalities, fruits, and evidence of

crime.

4.      The statements contained in this affidavit are based in part on:  information provided by

FBI Special Agents; written reports about this and other investigations that I have received,

directly or indirectly, from other law enforcement agents, information gathered from the service

of administrative subpoenas; the results of physical and electronic surveillance conducted by law

enforcement agents; independent investigation and analysis by FBI agents/analysts and computer

forensic professionals; and my experience, training and background as a Special Agent (SA) with

the FBI.  Because this affidavit is being submitted for the limited purpose of securing

authorization for the requested search warrant I have not included each and every fact known to

me concerning this investigation.  Instead, I have set forth only the facts that I believe are

necessary to establish the necessary foundation for the requested warrant.

## RELEVANT STATUTES

5.     This investigation concerns alleged violations of 18 U.S.C. § 2252A(a)(5)(B) which

prohibits a person from knowingly possessing or knowingly accessing with intent to view, or

attempting to do so, any material that contains an image of child pornography, as defined in 18

U.S.C. § 2256(8), that has been mailed or shipped or transported using any means or facility of

interstate or foreign commerce or in affecting interstate or foreign commerce by any means,

including by computer, or that was produced using materials that have been mailed or shipped or

transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

6.     The following definitions apply to this Affidavit and attachments hereto:

   a. "Bulletin Board," means an Internet-based website that is either secured (accessible

      with a password) or unsecured and provides members with the ability to view

      postings by other members and make postings themselves. Postings can contain text

      messages, still images, video images, or web addresses that direct other members to

      specific content the poster wishes. Bulletin boards are also referred to as "internet

      forums" or "message boards." A "post" or "posting" is a single message posted by a

      user. Users of a bulletin board may post messages in reply to a post. A message

      "thread," often labeled a "topic," refers to a linked series of posts and reply messages.

      Message threads or topics often contain a title which is generally selected by the user

      who posted the first message of the thread. Bulletin boards often also provide the

      ability for members to communicate on a one-to-one basis through "private

      messages." Private messages are similar to e-mail messages that are sent between

3

two members of a bulletin board.  They are accessible only by the user who sent/received such a message or by the Website Administrator.

b.  "Chat," refers to any kind of communication over the Internet that offers a real-time transmission of text messages from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

c.  "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, legally obscene or that do not necessarily depict minors in sexually explicit conduct.

d.  "Child Pornography," as used herein, is defined in 18 U.S.C. § 2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

e.  "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1) as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

f.  "Computer Server," or "Server," as used herein, is a computer that is attached to a dedicated network and serves many users.  A web server, for example, is a computer which hosts the data associated with a website.  That web server receives requests from a user and delivers information from the server to the user's computer via the Internet.  A domain name system ("DNS") server, in essence, is a computer on the Internet that routes communications when a user types a domain name, such as www.cnn.com, into his or her web browser.  Essentially, the domain name must be translated into an Internet Protocol ("IP") address so the computer hosting the web site may be located, and the DNS server provides this function.

g.  "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

h.  "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form.  It

5

commonly includes programs to run operating systems, applications, and utilities.

i. "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

j. "Computer passwords, pass-phrases and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or pass-phrase (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k. "File Transfer Protocol," ("FTP") as used herein, is a standard network protocol used to transfer computer files from one host to another over a computer network, such as the Internet. FTP is built on client-server architecture and uses separate control and data connections between the client and the server.

l. "Host Name," as used herein, is a name assigned to a device connected to a computer network that is used to identify the device in various forms of electronic communication, such as communications over the Internet;

6

m. "Hyperlink," refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

n. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

o. "Internet Service Providers," ("ISPs") as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an Internet Service Provider ("ISP") over a telephone line, through a cable system or via satellite, and can access the Internet by using his or her account name and personal password.

p. "Internet Protocol address," or "IP address," refers to a unique number used by a

7

computer to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet. IP addresses are also used by computer servers, including web servers, to communicate with other computers.

q.  Media Access Control ("MAC") address. The equipment that connects a computer to a network is commonly referred to as a network adapter. Most network adapters have a MAC address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. A unique MAC address allows for proper routing of communications on a network. Because the MAC address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

r.  "Minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

s.  The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact

8

discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

t.   "Secure Shell," ("SSH") as used herein, is a security protocol for logging into a remote server.  SSH provides an encrypted session for transferring files and executing server programs.

u.   "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  See 18 U.S.C. § 2256(2).

v.   "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address.   URLs are made of letters, numbers, and other symbols in a standard form.  People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

w.   "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual

9

image.  See 18 U.S.C. § 2256(5).

    x.  "Website" consists of textual pages of information and associated graphic images.

The textual information is stored in a specific format known as Hyper-Text Mark-up

Language ("HTML") and is transmitted from web servers to various web clients via

Hyper-Text Transport Protocol ("HTTP");

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

7.    A user of the Internet at 1216 West Jackson Street, Painesville, Ohio 44077 has been

linked to an online community of individuals who regularly send and receive child pornography

via a website that operated on an anonymous online network.  The website is described below

and referred to herein as "Website A."[1]  There is probable cause to believe that a user of the

Internet at 1216 West Jackson Street, Painesville, Ohio 44077 knowingly accessed with intent to

view material that contains an image(s) of child pornography on "Website A."

## The Network[2]

8.    "Website A" operated on a network ("the Network") available to Internet users who are

aware of its existence.  The Network is designed specifically to facilitate anonymous

communication over the Internet.  In order to access the Network a user must install computer

---

[1]    The actual name of "Website A" is known to law enforcement.  Disclosure of the name of the site would potentially alert its members to the fact that law enforcement action is being taken against the site and its users, potentially provoking members to notify other members of law enforcement action, flee, and/or destroy evidence.  Accordingly, for purposes of the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the website will be identified as "Website A."

[2]    The actual name of the Network is known to law enforcement.  The network remains active and disclosure of the name of the network would potentially alert its members to the fact that law enforcement action is being taken against the network, potentially provoking members to notify other members of law enforcement action, flee, and/or destroy evidence.  Accordingly, for purposes of the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the network will be identified as "the Network."

software that is publicly available, either by downloading software to the user's existing web browser, downloading free software available from the Network's administrators, or downloading a publicly-available third-party application.[3] Using the Network prevents someone attempting to monitor an Internet connection from learning what sites a user visits and prevents the sites the user visits from learning the user's physical location. Because of the way the Network routes communication through other computers, traditional IP identification techniques are not viable.

9.      Websites that are accessible only to users within the Network can be set up within the Network and "Website A" was one such website. Accordingly, "Website A" could not generally be accessed through the traditional Internet.[4] Only a user who had installed the appropriate software on the user's computer could access "Website A." Even after connecting to the Network, however, a user had to know the exact web address of "Website A" in order to access it. Websites on the Network are not indexed in the same way as websites on the traditional Internet. Accordingly, unlike on the traditional Internet, a user could not simply perform a Google search for the name of "Website A," obtain the web address for "Website A," and click on a link to navigate to "Website A." Rather, a user had to have obtained the web address for "Website A" directly from another source, such as other users of "Website A," or from online postings describing both the sort of content available on "Website A" and its location. Accessing "Website A" therefore required numerous affirmative steps by the user, making it extremely

---

3      Users may also access the Network through so-called "gateways" on the open Internet, however, use of those gateways does not provide users with the full anonymizing benefits of the Network.

4      Due to a misconfiguration, prior to February 20, 2015, Website A was occasionally accessible through the traditional Internet. In order to access Website A in that manner, however, a user would have had to know the exact IP address of the computer server that hosted Website A, which information was not publicly available. As of on or about February 20, 2015, Website A was no longer accessible through the traditional Internet.

unlikely that any user could have simply stumbled upon "Website A" without first understanding its content and knowing that its primary purpose was to advertise and distribute child pornography.

10.     The Network's software protects users' privacy online by bouncing their communications around a distributed network of relay computers run by volunteers all around the world, thereby masking the user's actual IP address which could otherwise be used to identify a user.

11.     The Network also makes it possible for users to hide their locations while offering various kinds of services, such as web publishing, forum/website hosting, or an instant messaging server. Within the Network itself, entire websites can be set up which operate the same as regular public websites with one critical exception - the IP address for the web server is hidden and instead is replaced with a Network-based web address. A user can only reach such sites if the user is using the Network client and operating in the Network. Because neither a user nor law enforcement can identify the actual IP address of the web server, it is not possible to determine through public lookups where the computer that hosts the website is located. Accordingly, it is not possible to obtain data detailing the activities of the users from the website server through public lookups.

## DESCRIPTON OF "WEBSITE A" AND ITS CONTENT

12.     "Website A" was a child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children, including the safety and security of individuals who seek to sexually exploit children online. On or about February 20, 2015 the computer server hosting "Website A" was seized from a web-hosting facility in Lenoir, North Carolina. The website

12

operated in Newington, Virginia from February 20, 2015 until March 4, 2015 at which time "Website A" ceased to operate. Between February 20, 2015 and March 4, 2015 law enforcement agents acting pursuant to an order of the United States District Court for the Eastern District of Virginia monitored electronic communications of users of "Website A." Before, during, and after its seizure by law enforcement, law enforcement agents viewed, examined and documented the contents of "Website A" which are described below.

13.    According to statistics posted on the site, "Website A" contained a total of 117,773 posts, 10,622 total topics, and 214,898 total members as of March 4, 2015. The website appeared to have been operating since approximately August 2014, which is when the first post was made on the message board. Between September of 2014 and February 19, 2015, on the main page of the site, located to either side of the site name were two images depicting partially clothed prepubescent girls with their legs spread apart, along with the text underneath stating, "No cross-board reposts, .7z preferred, encrypt filenames, include preview, Peace out." [5] Based on my training and experience, I know that: "no cross-board reposts" refers to a prohibition against material that is posted on other websites from being "re-posted" to "Website A;" and ".7z" refers to a preferred method of compressing large files or sets of files for distribution. Two data-entry fields with a corresponding "Login" button were located to the right of the site name. Located below the aforementioned items was the message, "Warning! Only registered members are allowed to access the section. Please login below or 'register an account' [(a hyperlink to the registration page)] with "[Website A]." Below this message was the "Login" section, consisting

---

[5] On February 19, 2015, the site administrator replaced those two images with a single image, located to the left of the site name, depicting a prepubescent female, wearing a short dress and black stockings, posed sitting reclined on a chair with her legs crossed, in a sexually suggestive manner, and the text "No cross-board reposts, .7z preferred, Encrypt filenames, Include preview," to the right of the image.

of four data-entry fields with the corresponding text, "Username, Password, Minutes to stay logged in, and Always stay logged in."

14.     Upon accessing the "register an account" hyperlink, there was a message that informed users that the forum required new users to enter an email address that looks to be valid. However, the message instructed members not to enter a real email address.  The message further stated that once a user registered (by selecting a user name and password), the user would be able to fill out a detailed profile.  The message went on to warn the user "[F]or your security you should not post information here that can be used to identify you."  The message further detailed rules for the forum and provided other recommendations on how to hide the user's identity for the user's own security.

15.     After accepting the above terms, registration to the message board then required a user to enter a username, password, and e-mail account; although a valid e-mail account was not required as described above.

16.     After successfully registering and logging into the site, the user could access any number of sections, forums, and sub-forums.  Some of the sections, forums, and sub-forums available to users included: (a) How to; (b) General Discussion; (c) [Website A] information and rules; and (d) Security & Technology discussion. Additional sections, forums, and sub-forums included (a) Jailbait – Boy;  (b) Jailbait – Girl; (c) Preteen – Boy; (d) Preteen – Girl; (e) Pre-teen Videos – Girl HC; (f) Pre-teen Videos – Boys HC; (g) Toddlers; and (h) Kinky Fetish – Scat.  Based on my training and experience, I know that "jailbait" refers to underage but post-pubescent minors; the abbreviation "HC" means hardcore (i.e., depictions of penetrative sexually explicit conduct); and "scat" refers to the use of feces in various sexual acts, watching someone defecating, or

14

simply seeing the feces. An additional section and forum was also listed in which members could exchange usernames on a Network-based instant messaging service that I know, based upon my training and experience, to be commonly used by subjects engaged in the online sexual exploitation of children.

17.     A review of the various topics within the above forums revealed each topic contained a title, the author, the number of replies, the number of views, and the last post. The "last post" section of a particular topic included the date and time of the most recent posting to that thread as well as the author. Upon accessing a topic, the original post appeared at the top of the page, with any corresponding replies to the original post included in the post thread below it. Typical posts appeared to contain text, images, thumbnail-sized previews of images, compressed files (such as Roshal Archive files, commonly referred to as ".rar" files, which are used to store and distribute multiple files within a single file), links to external sites, or replies to previous posts.

18.     A review of the various topics within the "[Website A] information and rules," "How to," "General Discussion," and "Security & Technology discussion" forums revealed that the majority contained general information in regards to the site, instructions and rules for how to post, and welcome messages between users.

19.     A review of topics within the remaining forums revealed the majority contained discussions about, and numerous images that appeared to depict, child pornography and child erotica depicting prepubescent girls, boys, and toddlers. Examples of these are as follows:

(a)     On February 3, 2015, a user posted a topic entitled "Buratino-06" in the forum "Pre-teen – Videos - Girls HC" that contained numerous images depicting child pornography of a prepubescent or early pubescent girl. One of these images depicted

15

the girl being orally penetrated by the penis of a naked male;

(b) On January 30, 2015, a user posted a topic entitled "Sammy" in the forum "Pre-teen –
Photos – Girls" that contained hundreds of images depicting child pornography of a
prepubescent girl.  One of these images depicted the female being orally penetrated
by the penis of a male; and

(c) On September 16, 2014 a user posted a topic entitled "9yo Niece - Horse.mpg" in the
"Pre-teen Videos - Girls HC" forum that contained four images depicting child
pornography of a prepubescent girl and a hyperlink to an external website that
contained a video file depicting what appeared to be the same prepubescent girl.
Among other things, the video depicted the prepubescent female, who was naked
from the waist down with her vagina and anus exposed, lying or sitting on top of a
naked adult male, whose penis was penetrating her anus.

20.    A list of members, which was accessible after registering for an account, revealed that
approximately 100 users made at least 100 posts to one or more of the forums.  Approximately
31 of these users made at least 300 posts.  In total, "Website A" contained thousands of postings
and messages containing child pornography images. Those images included depictions of nude
prepubescent minors lasciviously exposing their genitals or engaged in sexually explicit conduct
with adults or other children.

21.    "Website A" also included a feature referred to as "[Website A] Image Hosting."  This
feature of "Website A" allowed users of "Website A" to upload links to images of child
pornography that are accessible to all registered users of "Website A."  Users of "Website A"
had the ability to download any of the images or videos embedded in the posts, as well as

download any or the images of videos accessed by following the embedded links.  On February 12, 2015 an FBI Agent accessed a post on "Website A" titled "Giselita" which was created by a particular "Website A" user.  The post contained links to images stored on "[Website A] Image Hosting."  The images depicted a prepubescent girl in various stages of undress.  Some images were focused on the nude genitals of a prepubescent girl.  Some images depicted an adult male's penis partially penetrating the vagina of a prepubescent girl.

22.     Text sections of "Website A" provided forums for discussion of methods and tactics to use to perpetrate child sexual abuse.

      a.  On January 8, 2015 a user posted a topic entitled "should i proceed?" in the forum "Stories - Non-Fiction" that contained a detailed accounting of an alleged encounter between the user and a 5 year old girl. The user wrote "...it felt amazing feeling her hand touch my dick even if it was through blankets and my pajama bottoms..."  The user ended his post with the question, "should I try to proceed?" and further stated that the girl "seemed really interested and was smiling a lot when she felt my cock."  A different user replied to the post and stated, "...let her see the bulge or even let her feel you up...you don't know how she might react, at this stage it has to be very playful...".

**COURT AUTHORIZED USE OF NETWORK INVESTIATIVE TECHNIQUE (NIT)**

23.     Websites generally have Internet Protocol ("IP") address logs that can be used to locate and identify the site's users.  In such cases, after the seizure of a website whose users were engaging in unlawful activity, law enforcement could  review those logs in order to determine the IP addresses used by users of "Website A" to access the site.  A publicly available lookup

could then be performed to determine what Internet Service Provider ("ISP") owned the target IP address. A subpoena could then be sent to that ISP to determine the user to which the IP address was assigned at a given date and time.

24.     However, because of the Network software utilized by "Website A" any such logs of user activity would contain only the IP addresses of the last computer through which the communications of "Website A" users were routed before the communications reached their destinations. The last computer is not the actual user who sent the communication or request for information, and it is not possible to trace such communications back through the Network to that actual user. Such IP address logs therefore could not be used to locate and identify users of "Website A."

25.     Accordingly, on February 20, 2015 the same date "Website A" was seized, the United States District Court for the Eastern District of Virginia authorized a search warrant to allow law enforcement agents to deploy a Network Investigative Technique ("NIT") on "Website A" in an attempt to identify the actual IP addresses and other identifying information of computers used to access "Website A." Pursuant to that authorization, between February 20, 2015 and approximately March 4, 2015 each time any user or administrator logged into "Website A" by entering a username and password, the FBI was authorized to deploy the NIT which would send one or more communications to the user's computer. Those communications were designed to cause the receiving computer to deliver to a computer known to or controlled by the government data that would help identify the computer, its location, other information about the computer, and the user of the computer accessing "Website A." That data included: the computer's actual IP address, and the date and time that the NIT determined what that IP address was; a unique

18

identifier generated by the NIT (e.g., a series of numbers, letters, and/or special characters) to distinguish the data from that of other computers; the type of operating system running on the computer, including type (e.g., Windows), version (e.g., Windows 7), and architecture (e.g., x 86); information about whether the NIT had already been delivered to the computer; the computer's Host Name; the computer's active operating system username; and the computer's MAC address.

## "554422" ON "Website A"

26.    According to data obtained from logs on "Website A," monitoring activity by law enforcement, and the deployment of a NIT, a user with the user name "554422" engaged in the following activity on "Website A."

27.    The profile page of user "554422" indicated this user originally registered an account on "Website A" on 01/21/2015. Profile information on "Website A" may include contact information and other information that is supplied by the user. It also contains information about that user's participation on the site, including statistical information about the user's posts to the site and a categorization of those posts. According to the user "554422's" profile, this user was a "Newbie" Member of "Website A." Further, according to the Statistics section of this user's profile, the user "554422" had been actively logged into the website for a total of 7.24 hours between the time period of 01/21/2015 and 03/04/2015.

## IP ADDRESS AND IDENTIFICATION OF USER "554422"on "Website A"

28.    According to data obtained from logs on "Website A," monitoring by law enforcement, and the deployment of a NIT, on 03/01/2015, the user "554422" engaged in the following activity on "Website A" from IP address 76.188.24.146. During the session described below,

19

this user browsed "Website A" after logging into "Website A" with a username and a password.

29.    On 03/01/2015 the user "554422" with IP address 76.188.24.146 accessed the post entitled, "12yo and dog". The thumbnail images depict an approximately 10-12 year old female, nude from the waist down. In the initial images, the female uses her hands to hold open her labia and display her vagina. As the thumbnail progresses, the juvenile female lays on her back with her legs spread apart, displaying her vagina. In some of the later images, a dog is seen atop the juvenile female, with one of the images showing the dog's muzzle near the vagina of the juvenile female.

30.    During the following additional sessions, the user "554422" also browsed "Website A" after logging into "Website A" with a username and password. During these sessions, the user's IP address information was not collected.

31.    On 03/04/2015 the user "554422" accessed a post under a thread titled "6yo girl masturbating with a toothbrush and gets fucked, with cum and sound." The original user posting the video wrote "This is one of the most lovely perverted videos I have seen for ages. A 6yo girl sitting on a toilet seat is masturbating with the back of a toothbrush. The guy starts to fuck her while she is masturbating then cums all over her pussy. Even though her pussy is covered with his sperm, she carries on masturbating using his cum as a lube." The link shows a series of 12 thumbnail images from a video which depict an approximately 5-7 year old prepubescent female, nude from the waist down, sitting on a toilet. The juvenile female is shown rubbing her vagina with the back of a toothbrush and an erect male penis, through a series of photographs, is shown penetrating the girl's vagina. In the final two images, the girl's vagina is shown with what appears to be sperm all over her vagina and pelvic area. The prepubescent girl is still rubbing her

20

vagina with the back of the toothbrush.

32.      On or about 03/04/2015 user "554422" viewed the post entitled "12y Preteen Girl Wants 9y Boy Cock Inside Her Ass And Pussy" which included a contact sheet, or preview image, with 20 images that depicted what appeared to be a prepubescent boy anally penetrating a female. After viewing the post and the preview image, user "554422" downloaded the preview image.

33.      Every user on "Website A" had a link in their profile which enabled them to delete their account. As of 03/04/2015, at the end of this operation when the site was permanently taken down, the account of user "554422" was still active.

34.      Using publicly available websites, FBI Special Agents were able to determine that the above IP Address was operated by the Internet Service Provider ("ISP") Time Warner Cable.

35.      On 03/11/2015 an administrative subpoena/summons was served to Time Warner Cable requesting information related to the user who was assigned IP address 76.188.24.146 on 03/01/2015. According to the information received from Time Warner Cable, Lauden Sullivan was receiving Internet service at the address of the SUBJECT PREMISES at this time. The subpoena response also indicated this service was installed on 06/25/2014 and the Internet service was current as of 03/16/2015 at the aforementioned premises.

36.      On 09/25/2015 your Affiant reviewed the Ohio Bureau Motor Vehicles (BMV) database for driver's license information for Lauden A. Sullivan. The results listed him as currently residing at the SUBJECT PREMISES.

37.      On 10/21/2015 your Affiant conducted a surveillance of the SUBJECT PREMISES. During this surveillance your Affiant observed Lauden Sullivan standing in the driveway of the residence, behind the residence, closing the door of the detached garage.

21

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO ACCESS WITH INTENT TO VIEW AND/OR PRODUCE, RECEIVE, DISTRIBUTE, OR POSSESS CHILD PORNOGRAPHY

38.     Based on my previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to online consumers of child pornography:

a.      Online consumers of child pornography almost always maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.  These child pornography images are often maintained for several years and are kept close by, usually at the consumer's residence, to enable the individual to view the child pornography images, which are valued highly.

b.      Individuals who would have knowledge about how to access a hidden and embedded bulletin board would have gained knowledge of its location through online communication with others of similar interest.  Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images. Consumers of child pornography who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring child pornography images.  Consumers of child pornography who utilize these types of forums to access child pornography almost always download images and/or videos of child pornography from such sites.

g.      Consumers of child pornography prefer not to be without their child pornography

22

for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

39.     Based on the following, I believe that the user of the Internet account at SUBJECT PREMISES, likely displays characteristics common to a consumer of child pornography.  For example, the target of investigation:

a.  Became a user of "Website A", whose primary purpose was to advertise and distribute child pornography;

b.  Accessed "Website A" for a total of twenty-six hours over a four month period. In a two-day period, accessed at least three separate posts, containing thumbnail images of child pornography and links to child pornography

## **BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY**

40.     Computers and digital technology have dramatically changed the way in which individuals interested in child pornography interact with each other.  Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

41.     Child pornographers can transfer printed photographs into a computer-readable format with a scanner.  Furthermore, when a digital camera is used, the photograph is saved as a digital file that can be directly transferred to a computer by simply connecting the camera to the computer.  In the last ten years, the resolution of pictures taken by digital cameras has increased dramatically, meaning the photos taken with digital cameras have become sharper and crisper. Photos taken on a digital camera are stored on a removable memory card in the camera.  These memory cards often store up to 32 gigabytes of data, which provides enough space to store

23

thousands of high-resolution photographs.  Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera.  The video files can be easily transferred from the camcorder to a computer.

42.     A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.  Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution, receipt and access to child pornography materials.

43.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  In addition, there are numerous options available for the storage of computer or digital files.  One-Terabyte external and internal hard drives are not uncommon.  Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer.  It is extremely easy for an individual to take a photo with a digital camera, upload that photo to a computer, and then copy it (or any other files on the computer) to any one

24

of those media storage devices (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them). Media storage devices can easily be concealed and carried on an individual's person.

44.    The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

45.    Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

46.    As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). Unintentional digital information e.g. traces of the path of an electronic communication, and temporary files can also be retained by the web browser software, (e.g. Internet Explorer, Google Chrome, Firefox). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.

Such information is often maintained indefinitely until overwritten by other data.

### SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

47.     Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a.  Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b.  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed,

password-protected, or encrypted files. Since computer evidence is extremely

vulnerable to tampering or destruction (which may be caused by malicious code

or normal activities of an operating system), the controlled environment of a

laboratory is essential to its complete and accurate analysis.

48.     In order to fully retrieve data from a computer system, the analyst needs all magnetic

storage devices as well as the central processing unit ("CPU"). In addition, the analyst needs all

the system software (operating systems or interfaces, and hardware drivers) and any applications

software which may have been used to create the data (whether stored on hard drives or on

external media).

49.     Furthermore, because there is probable cause to believe that the computer and its storage

devices are all instrumentalities of crimes, within the meaning of 18 U.S.C. §§ 2251 through

2256, they should all be seized as such.

## CONCLUSION

50.     Based on the foregoing, there is probable cause to believe that the federal criminal

statutes cited herein have been violated, and that the contraband, property, evidence, fruits and

instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are

located at the SUBJECT PREMISES, described in Attachment A. I respectfully request that this

Court issue a search warrant for the SUBJECT PREMISES, authorizing the seizure and search of

the items described in Attachment B.

_____

Charles Sullivan
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this _19th_ day of  January, 2016.

/s/ WILLIAM H. BAUGHMAN. JR.
_____

William H. Baughman, Jr.
United States Magistrate Judge

28

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

The location known as 1216 West Jackson Street, Painesville, Ohio 44077 is described as a one story, white colored siding, gray colored roof, single family dwelling with a two car detached garage behind the residence.  The numerals "1216" are located on a post near the front door of the residence.  The residence is located on the north side of West Jackson Street, approximately 0.10 miles west of Route 44 and approximately 0.25 miles east of Shamrock Boulevard in the city of Painesville, Ohio.

The premises to be searched includes any appurtenances to the real property that is the SUBJECT PREMISES of 1216 West Jackson Street, Painesville, Ohio 44077 and any storage units and/or outbuildings.

29

## ATTACHMENT B

## INFORMATION TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2252A

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

30

    h.  evidence of the times the COMPUTER was used;

    i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.  records of or information about Internet Protocol addresses used by the COMPUTER;

    l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    m.  contextual information necessary to understand the evidence described in this attachment.

    n.  evidence of any accounts with an internet service provider.

    o.  evidence of the use of or accounts with online storage or remote storage providers.

3.  Routers, modems, and network equipment used to connect computers to the Internet.

4.  Child pornography and child erotica, including, but not limited to the images accessed on "Website A.".

5.  Records, information, and items relating to violations of the statutes described above including

    a.  Records, information, and items relating to the occupancy or ownership of 1216 West Jackson Street, Painesville, Ohio 44077 including utility and telephone bills, mail envelopes, or addressed correspondence; Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

    b.  Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

       c.   Records and information relating to sexual exploitation of children, including correspondence and communications between users of Website A.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

32

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)     1:16 MJ 9003

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

1:16 MJ 9003

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The location known as 1216 West Jackson Street, Painesville, Ohio 44077 is described as a one story, white colored siding, gray colored roof, single family dwelling with a two car detached garage behind the residence. The numerals "1216" are located on a post near the front door of the residence. The residence is located on the north side of West Jackson Street, approximately 0.10 miles west of Route 44 and approximately 0.25 miles east of Shamrock Boulevard in the city of Painesville, Ohio.

The premises to be searched includes any appurtenances to the real property that is the SUBJECT PREMISES of 1216 West Jackson Street, Painesville, Ohio 44077 and any storage units and/or outbuildings.

1:16 MJ 9003

## ATTACHMENT B

## INFORMATION TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2252A

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h.  evidence of the times the COMPUTER was used;

    i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.  records of or information about Internet Protocol addresses used by the COMPUTER;

    l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    m.  contextual information necessary to understand the evidence described in this attachment.

    n.  evidence of any accounts with an internet service provider.

    o.  evidence of the use of or accounts with online storage or remote storage providers.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography and child erotica, including, but not limited to the images accessed on "Website A.".

5. Records, information, and items relating to violations of the statutes described above including

    a.  Records, information, and items relating to the occupancy or ownership of 1216 West Jackson Street, Painesville, Ohio 44077 including utility and telephone bills, mail envelopes, or addressed correspondence; Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

    b.  Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

31

    c.   Records and information relating to sexual exploitation of children, including correspondence and communications between users of Website A.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

1:16 MJ 9003

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The location known as 1216 West Jackson Street, Painesville, Ohio 44077 is described as a one story, white colored siding, gray colored roof, single family dwelling with a two car detached garage behind the residence.  The numerals "1216" are located on a post near the front door of the residence.  The residence is located on the north side of West Jackson Street, approximately 0.10 miles west of Route 44 and approximately 0.25 miles east of Shamrock Boulevard in the city of Painesville, Ohio.

The premises to be searched includes any appurtenances to the real property that is the SUBJECT PREMISES of 1216 West Jackson Street, Painesville, Ohio 44077 and any storage units and/or outbuildings.